**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN OVERSIGHT, <br> 1030 15th Street NW, B255 <br> Washington, DC 20005 <br><br> *Plaintiff,* <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br> 950 Pennsylvania Avenue NW <br> Washington, DC 20530, <br><br> *Defendant.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 25-cv-3414 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT**

1. American Oversight brings this action against the U.S. Department of Justice under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel compliance with the requirements of FOIA and the release of all photographs, video recordings, and/or audio recordings of the removal of people to El Salvador taken or captured on March 15, 2025, and March 16, 2025, including video recordings of plane boardings in the United States or plane debarkations in El Salvador.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202.

3. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

4.      Because Defendant has failed to comply with the applicable time-limit provisions of FOIA, American Oversight is deemed to have exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i) and is now entitled to judicial action that enjoins Defendant from continuing to withhold records and orders the expedited production of records improperly withheld.

**PARTIES**

5.      Plaintiff American Oversight is a nonpartisan, non-profit section 501(c)(3) organization. American Oversight is committed to promoting transparency in government, educating the public about government activities, and ensuring the accountability of government officials. Through research and FOIA requests, American Oversight uses the information it gathers, and its analysis of it, to educate the public about the activities and operations of the federal government through reports, published analyses, press releases, and other media. The organization is incorporated under the laws of the District of Columbia.

6.      Defendant U.S. Department of Justice ("DOJ") is a department of the executive branch of the U.S. government headquartered in Washington, D.C., and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). DOJ has possession, custody, and control of records that American Oversight seeks.

**STATEMENT OF FACTS**

7.      On March 14, 2025, Emil Bove—then Principal Associate Deputy Attorney General, now a Third Circuit Court of Appeals judge—and Associate Deputy Attorney General Paul Perkins summoned attorneys in the DOJ's Office of Immigration Litigation ("OIL"), including then-Acting Deputy Director of OIL, Erez Reuveni, to a meeting.

8. In the meeting, Mr. Bove told the OIL attorneys that one or more planes containing individuals being removed from the country under the Alien Enemies Act of 1798, 50 U.S.C. § 21 ("AEA"), would be taking off over the weekend "no matter what."

9. Mr. Bove also told the OIL attorneys in that meeting that they would need to consider ignoring any court orders that would enjoin removals of deported persons under the AEA.

10. On March 15, 2025, President Trump announced in a Proclamation that a Venezuelan gang, Tren de Aragua, was "perpetrating, attempting, and threatening an invasion or predatory incursion" and "conducting irregular warfare against the territory of the United States both directly and at the direction, clandestine or otherwise, of the Maduro regime in Venezuela." Proclamation No. 10903 (the "Proclamation"), *Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua*, 90 Fed. Reg. 13033, 13034 § 1 (Mar. 14, 2025).

11. Trump's Proclamation invoked the AEA to order the Attorney General and Secretary of Homeland Security to "apprehend, restrain, secure, and remove" "all Venezuelan citizens 14 years of age or older who are members of [Tren de Aragua], [who] are within the United States, and are not actually naturalized or lawful permanent residents of the United States" as "Alien Enemies." *Id.* at 13034 §§ 1, 4.

12. Congress has not declared war against Venezuela, nor is there any ongoing war between the U.S. and Venezuela, nor is Tren de Aragua a "foreign nation."  50 U.S.C. § 21.

13. Trump's Proclamation further declares that "by virtue of their membership in [Tren de Aragua], [all such members are] chargeable with actual hostility against the United States and are therefore ineligible for the benefits of 50 U.S.C. [§] 22." 90 Fed. Reg. 13033, 13034 § 1.

14. Also on March 15, 2025, Venezuelans held by the Department of Homeland Security ("DHS") in Texas were taken from their cells, shackled, and loaded onto planes. Mem. Op., *J.G.G. v. Trump*, No. CV 25-766 (JEB), 2025 WL 1577811, at *1 (D.D.C. June 4, 2025).

15. Some of those individuals immediately sought emergency relief in this District. *See id*.

16. None of the individuals who were loaded onto the above-referenced planes on March 15, 2025, had been provided an opportunity to prove they were not, in fact, members of Tren de Aragua. *See J.G.G.,* 2025 WL 1577811, at *1.

17. The planes waited on the tarmac for hours, and "many passengers aboard reportedly began to panic and beg officials for more information, but none was provided." *Id*.

18. On March 15, 2025, the Honorable James E. Boasberg of the District Court for the District of Columbia granted the Venezuelan plaintiffs emergency relief and ordered the government "not to relinquish custody of the men." *Id*. at *2.

19. Some government officials involved in the removal of the Venezuelans on March 14 and 15, 2025, ignored Judge Boasberg's order.

20. On the evening of March 15, the planes flew to Honduras, then to El Salvador, where the Venezuelan passengers were transferred to a mega-prison known as the Center for Terrorism Confinement, notorious for torturing its prisoners. *Id*. at *2, 4.

21. On March 16, 2025, in two separate cases, the Supreme Court enjoined the removals of Venezuelans pursuant to Trump's Proclamation, finding the Fifth Amendment's Due Process Clause requires more notice than the Venezuelan detainees had been given. *See Trump v. J.G.G.*, 604 U.S. 670, 672–73 (2025) (per curiam); *A.A.R.P. v. Trump*, 605 U.S. 91, 94–95 (2025).

22. On June 24, 2025, Mr. Reuveni filed a whistleblower complaint detailing evidence of misconduct by Mr. Bove, as well as other government officials—including Joseph Mazzara, Acting General Counsel for the Department of Homeland Security.

23. Mr. Reuveni's complaint detailed Mr. Bove's admonition at the March 14 meeting to ignore court orders that might enjoin the imminent removals of Venezuelans under the AEA.

24. On June 25, 2025, the Senate Judiciary Committee held a hearing on Mr. Bove's judicial nomination.

25. During that hearing, when asked about the allegations in Mr. Reuveni's whistleblower disclosures, Mr. Bove said he did "not recall" if he had instructed federal prosecutors to defy court orders.

26. On July 15, 2025, American Oversight submitted FOIA requests to Defendant bearing internal tracking number DOJ-25-1757 ("the DOJ Request," attached as Exhibit A), to the Department of Homeland Security ("DHS") bearing internal tracking number DHS-25-1758 ("the DHS Request"), and to Immigration and Customs Enforcement ("ICE"), a component of DHS, bearing tracking number DHS-ICE-25-1759 ("the ICE Request"), each seeking the following records:

> All photographs, video recordings, and/or audio recordings of the removal of people to El Salvador taken or captured on March 15, 2025, and March 16, 2025. This includes, but is not limited to, video recordings of plane boardings in the United States or plane debarkations in El Salvador.
>
> To the extent that these records contain timestamps or other metadata, American Oversight requests that your agency produce these as well as responsive to this request.

Ex. A.

27. Because the DOJ Request seeks specific, recent, and readily identifiable documents, Defendant should have placed it on the "Simple" processing track for prompt agency response.

28. American Oversight requested expedited processing of the DOJ Request and included the certification required by 5 U.S.C. § 552(a)(6)(E)(i) and DOJ's regulations. *See* Ex. A at 4–6.

29. In the DOJ Request (the only request at issue in this lawsuit[1]), in addition to the "urgency to inform the public" standard under 28 C.F.R. § 16.5(e)(1)(ii), Plaintiff based its request for expedited processing on 28 C.F.R. § 16.5(e)(1)(iv), because the records it seeks concern "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv).

30. Specifically, there exist possible questions about the government's integrity with respect to ignoring federal court orders enjoining the removal of immigrants under the AEA on March 15, 2025.

31. There is widespread and exceptional media interest in those questions.

32. On July 18, 2025, DHS acknowledged receipt of the DHS Request, assigned it tracking number 2025-HQFO-05539 and denied American Oversight's request for expedited processing.

33. In the July 18 letter, DHS also notified American Oversight of its determination that the requested information is "under the purview of the Department of Justice" and that DHS

---

[1] Plaintiff includes allegations concerning its DHS and ICE Requests to show that it has requested the records at issue from each agency reasonably likely to possess some or all of them.

was referring the request to the FOIA Officer for the Department of Justice "for processing and direct response" to American Oversight.

34. On July 22, 2025, ICE acknowledged receipt of the ICE request, assigned it tracking number 2025-ICFO-49127 and denied American Oversight's request for expedited processing.

35. In the July 22 letter, ICE also notified Plaintiff that it had determined that the requested information is "under the purview of the Department of Justice" and that ICE was referring the request to the FOIA Officer for the Department of Justice "for processing and direct response" to American Oversight.

36. On July 24, 2025, Defendant acknowledged receipt of the DOJ Request, denied the request for expedited processing under 28 C.F.R. § 16.5(e)(1)(ii), and said Plaintiff's expedited processing request based on "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence," 28 C.F.R. § 16.5(e)(1)(iv), was still pending with the Director of Public Affairs. *See* attached Exhibit B.

37. DOJ also claimed it needed more than ten (10) additional days to issue a determination on Plaintiff's FOIA request due to "unusual circumstances" under 5 U.S.C. § 552 (a)(6)(B)(i)–(iii) (2018). *Id*.

38. Aside from a conclusory statement about consulting with "another Office," Defendant failed to identify any "unusual circumstances" that could justify extending the statutory deadline under 5 U.S.C. § 552 (a)(6)(B)(i)-(iii). *See id*.

39. DOJ's July 24, 2025 letter indicated that DOJ was processing the DOJ Request, which DOJ assigned tracking number FOIA-2025-05887. *See id*.

40. On July 25, 2025, Defendant acknowledged receipt of ICE Case Number 2025-ICFO-49127, which DOJ referenced as "Tracking Number EMRUFOIA072225-8, ICE Case Number 2025-ICFO-49127." *See* attached Exhibit C.

41. Defendant's July 25 letter states that the ICE Request "designated organizations outside of the Department of Justice as indicated below and will have to be resubmitted by [American Oversight] directly to them.*" Ex. C.

42. At the bottom of the July 25 letter, Defendant wrote the following: "*EL (sic) Salvador's Government, Public Records Office." *Id.*

43. Plaintiff understood Defendant's July 25 letter to instruct American Oversight to request the records directly from the government of El Salvador.

44. Plaintiff administratively appealed Defendant's July 25, 2025 determination of the ICE Request on August 12, 2025.

45. On September 23, 2025, DOJ notified Plaintiff that it was "remanding [Plaintiff's ICE Request] to the MRU to route [the] request to certain Department of Justice components." Ex. D.

46. On August 11, 2025, Defendant notified Plaintiff that the Director of Public Affairs had denied its request for expedited processing of the DOJ Request under 28 C.F.R. § 16.5(e)(1)(iv) and stated that DOJ was yet again taking more than a ten (10) day extension to make a FOIA determination. *See* attached Exhibit E.

47. Aside from a generic reference to consultations with other components, DOJ again failed to identify any "unusual circumstances" that could justify extending the statutory deadline under 5 U.S.C. § 552 (a)(6)(B)(i)–(iii). *See id.*

48. As of the date this lawsuit was filed, DOJ has failed to notify Plaintiff of a determination of Plaintiff's DOJ Request.

49. The requested records will likely shed light on government officials' actions following the above-referenced March 15, 2025 federal district court order.

50. At least as of the date of the DOJ Request, the requested records concern a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence," 28 C.F.R. § 16.5(e)(1)(iv), specifically, whether government officials ignored Judge Boasberg's order. *See* Ex. A.

51. At least as of the date of the DOJ Request, the requested records are urgently needed "to inform the public about an actual or alleged Federal Government activity" and the request is "made by a person who is primarily engaged in disseminating information." 28 C.F.R. § 16.5(e)(1)(ii). *See* Ex. A.

52. Fifty working days have now passed since American Oversight submitted the DOJ Request.

53. Defendant has failed to comply with 5 U.S.C. § 552(a)(6)(A).

*Exhaustion of Administrative Remedies*

54. As of the date of this Complaint, Defendant DOJ has failed to: (a) notify Plaintiff of a determination of FOIA-2025-05887, including the scope of responsive records DOJ intends to produce or withhold and the reasons for any withholdings; and (b) produce the requested records or demonstrate that they are lawfully exempt from production.

55. Through Defendant's failure to respond to Plaintiff's FOIA request within the time period required by law, American Oversight has exhausted its administrative remedies and is entitled to immediate judicial review.

## COUNT I
## Violation of FOIA, 5 U.S.C. § 552
## Failure to Grant Expedited Processing

56. American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

57. American Oversight properly requested records within Defendant's possession, custody, and control on an expedited basis.

58. Defendant is an agency subject to FOIA and must process FOIA requests on an expedited basis pursuant to the requirements of FOIA and agency regulations.

59. American Oversight's request justifies expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. §§ 16.5(e)(1)(ii) and (iv).

60. American Oversight is entitled to declaratory and injunctive relief requiring Defendant to process American Oversight's FOIA request on an expedited basis.

## COUNT II
## Violation of FOIA, 5 U.S.C. § 552
## Failure to Conduct Adequate Searches for Responsive Records

61. American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

62. American Oversight properly requested records within Defendant's possession, custody, and control.

63. Defendant has failed to promptly review agency records for the purpose of locating those records that are responsive to American Oversight's FOIA request.

64. Defendant's failure to conduct an adequate search for responsive records violates FOIA and applicable regulations.

65. Plaintiff American Oversight is therefore entitled to injunctive and declaratory relief requiring Defendant to promptly search for and produce records responsive to American Oversight's FOIA request.

## COUNT III
### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Responsive Records

66. American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

67. American Oversight properly requested records within Defendant's possession, custody, and control.

68. Defendant is an agency subject to FOIA and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials within no more than twenty (20) working days.

69. Defendant is wrongfully withholding non-exempt agency records requested by American Oversight.

70. Defendant is wrongfully withholding non-exempt agency records requested by American Oversight by failing to segregate exempt information in otherwise non-exempt records responsive to American Oversight's FOIA request.

71. Defendant's failure to provide all non-exempt responsive records violates FOIA and applicable regulations.

72. Plaintiff American Oversight is therefore entitled to declaratory and injunctive relief requiring Defendant to promptly produce all non-exempt records responsive to its FOIA request and provide indexes justifying the withholding of any responsive records withheld under claim of exemption.

**REQUESTED RELIEF**

WHEREFORE, American Oversight respectfully requests the Court:

(1) Order Defendant to process Plaintiff's request on an expedited basis;

(2) Order Defendant to conduct a search reasonably calculated to uncover all records responsive to American Oversight's July 15, 2025 FOIA request;

(3) Order Defendant to produce, within twenty working days or by such date as the Court deems appropriate, any and all non-exempt records responsive to American Oversight's FOIA request;

(4) Enjoin Defendant from continuing to withhold any and all non-exempt records responsive to American Oversight's FOIA request;

(5) Award American Oversight the costs of this proceeding, including reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(6) Grant American Oversight such other relief as the Court deems just and proper.

Dated: September 25, 2025                    Respectfully submitted,

*/s/ Elizabeth Haddix*
Elizabeth Haddix
D.C. Bar No. 90019750
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(252) 359-7424
Elizabeth.haddix@americanoversight.org

*Counsel for Plaintiff*